IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| McKENZIE KELLER,<br><br>Plaintiff,<br><br>v.<br><br>DELQUAN MAURICE DANFORD; EXTENDED STAY AMERICA, INC.; ESA P PORTFOLIO LLC, ESA P PORTFOLIO OPERATING LESSEE, LLC; RED LION HOTELS CORPORATION; SONESTA INTERNATIONAL HOTELS CORPORATION; WHC816, LLC; RL SALT LAKE, LLC; CHOICE HOTELS INTERNATIONAL, INC., SALT LAKE LODGING; and LLC CRRC PROPERTIES, LLC,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS AND DENYING PLAINTIFF'S MOTION TO AMEND.<br><br><br>Case 2:25-cv-595-TS-JCB<br><br>District Judge Ted Stewart<br>Magistrate Judge Jared C. Bennett |

This matter is before the Court on four Motions to Dismiss the Complaint, brought separately by groups of hotel owners, operators, or franchisers named as Defendants in this case (collectively, "Hotel Defendants" or "Defendants"),[1] and a Motion to Amend filed by Plaintiff.[2] For the reasons stated below, the Court will grant Defendants' Motions to Dismiss and deny Plaintiff's Motion to Amend.

---

[1] Docket No. 49 (brought by Defendants Red Lion Hotels Corporation; Sonesta International Hotel Corporation; WHC816, LLC; and RL Salt Lake, LLC); Docket No. 52 (brought by Defendants Extended Stay America, Inc.; ESA P Portfolio LLC; and ESA P Portfolio Operating Lessee LLC); Docket No. 53 (brought by Defendant Choice International, Inc.); and Docket No. 55 (brought by Defendants Salt Lake Lodging, LLC; and CRRC Properties, LLC).

[2] Docket No. 71.

## I.  BACKGROUND[3]

Plaintiff McKenzie Keller brings suit against Defendants for their purported involvement in human trafficking. Plaintiff began dating Defendant Delquan Maurice Danford in 2012. At some point in the relationship, Danford began trafficking Plaintiff by forcing her to engage in commercial sex through various coercive and abusive practices, including physical force and threats against both her and her children. He also controlled all of Plaintiff's money. These trafficking activities occurred primarily in Nevada, but Danford would also occasionally force Plaintiff to travel to Salt Lake City to engage in commercial sex work. Danford took these actions beginning in 2014 and through 2015.

Around April 2016, Plaintiff was able to escape Danford's control. She subsequently supported the government in pursuing criminal charges against him. Danford was eventually convicted of aggravated assault and human trafficking, for which he is currently incarcerated.

Plaintiff filed the instant suit on July 21, 2025, against Danford and the companies that owned, operated, or are franchisors of, three hotels located in Salt Lake City wherein Danford trafficked Plaintiff between 2014 and 2015. These hotels are: (1) the Extended Stay America - SLC Sugarhouse Hotel, located at 1220 East 2100 South, Salt Lake City, UT, 84106 (the "Sugarhouse ESA"), which is a franchisee of Defendant Extended Stay America, Inc., and owned and operated by either Defendant ESA P Portfolio Operating Lessee LLC, or Defendant ESA P Portfolio LLC during the events in question (collectively "ESA Defendants"); (2) the Red Lion Hotel, located at 161 West 600 South, Salt Lake City, Utah, 84101 (the "Red Lion"), which was a franchisee of Defendant Red Lion Hotels Corporation at the time of the events in question, but is currently a franchisee of Defendant Sonesta International Hotels Corporation, and was

---

[3] The following facts are summarized from the Complaint and taken as true for purposes of the instant Motions.

operated by Defendant WHC816, LLC during the events in question; and (3) the Quality Inn Hotel, located at 616 South 200 West, Salt Lake City, UT 84101 (the "Quality Inn"), which was a franchisee of Defendant Choice Hotels International and was owned and operated by Defendant CRRC Properties, LLC, until 2016, and later owned and operated by Defendant Salt Lake Lodging, LLC.

Regarding the amount of time she spent at each of the hotels, she asserts that she stayed at the Quality Inn on three or four separate occasions which, in total, amounted to one to two weeks; at the Sugarhouse ESA on numerous occasions for a total of about four months; and at the Red Lion on numerous occasions for a total of about one month (the Quality Inn, the Sugarhouse ESA, and the Red Lion are collectively referred to as the "SLC Hotels").

Plaintiff asserts that during her stays at each of the SLC Hotels, she had "visible bruises," including, on occasion, a black eye, and her arm was "branded" with a tattoo of the word "Greezy," which was Danford's street name. Plaintiff further engaged in the following as part of her "routine" while staying at the SLC Hotels: she booked rooms under her real name and used her real identification; paid for her room every day or every few days throughout her stay; often requested a room in the back of the property; requested fresh linens; disposed of used condoms and wrappers in the trash cans; and posted ads on websites known for facilitating commercial sex using the hotel's wifi.[4] Most notably, Plaintiff hosted an average of five to ten johns a day in her hotel rooms.[5] She states she would meet each john in the lobby or by the elevators in view of the SLC Hotel employees before bringing them to her room, and that she was "transparently dressed for sex work" when she did so.[6]

---

[4] Docket No. 1 ¶ 100.

[5] *Id.* ¶ 101.

[6] *Id.* ¶ 102.

3

Additionally, regarding her stays at the Red Lion specifically, Plaintiff states that she formed a friendship with a security guard, who she informed that she was being beat by "her man" in response to the security guard mentioning her bruising.[7]

Plaintiff alleges that Danford came with her on her first stay in Salt Lake City, which was at the Quality Inn, but the Complaint does not otherwise allege that Danford was present at the SLC Hotels or in Salt Lake City during the incidents in question, or that he interacted with hotel staff or the johns in some other manner. To the contrary, Plaintiff alleges that she paid for the hotel rooms and that Danford required her to send him the money she received from the trafficking activities either through a Walmart-to-Walmart transfer or by directly depositing the money into his bank account. This suggests that Danford was not in Salt Lake City with Plaintiff during the events in question and was otherwise uninvolved with the hotel staff.

Count I of Plaintiff's Complaint alleges that, through their acts or omissions, the Hotel Defendants perpetrated or benefited from Danford's sex trafficking, and are each liable for civil damages under the Victims of Trafficking and Violence Protections and Rights Act ("TVPRA"). Count II alleges that, for the same acts and omissions, Hotel Defendants are liable for civil damages under Utah Code Ann. § 77-38-15. Each of the Hotel Defendants subsequently filed Motions to Dismiss, alleging that the claims are time barred by the TVPRA's statute of limitations and, even if not, Plaintiff has failed to state a claim under both the TVPRA and Utah law. Additionally, Defendant Extended Stay America, Inc. asserts that the Court lacks personal jurisdiction over it.

In her Responses, Plaintiff concedes that she does not have a viable claim under Utah Code Ann. § 77-38-15. Accordingly, the Court will dismiss Count II. Plaintiff further concedes

---

[7] *Id.* ¶ 92.

that the Court lacks personal jurisdiction over Defendant Extended Stay America, Inc. Accordingly, the Court will dismiss them from the case. The remaining issues have been fully briefed and are ripe for determination.

## II.  STANDARD OF REVIEW

When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[8] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[9] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[10] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[11]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[12] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[13] The Court may also consider other documents "referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[14]

---

[8] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[12] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[13] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[14] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

## III.  DISCUSSION

### a.  *Statute of Limitations*

Each of the Hotel Defendants first argue that Plaintiff's TVPRA claims should be dismissed because they are time barred by the TVPRA's statute of limitations, which requires that a civil action be brought no later than either "10 years after the cause of action arose; or . . . 10 years after the victim reaches 18 years of age," whichever is later.[15]

Plaintiff filed the instant lawsuit on July 21, 2025. Plaintiff does not allege that she was a minor at the time she was trafficked, therefore, her claims are untimely if they arose before July 21, 2015. The Complaint states that Plaintiff was trafficked at each of SLC Hotels between 2014 and 2015. She does not provide a more specific time frame regarding when she was trafficked within this two-year span as to any of SLC Hotels. Defendants accordingly argue that some or all of her claims must be dismissed as time barred.[16]

The Tenth Circuit has made clear that "[a] complaint need not anticipate any affirmative defenses that may be raised by the defendant, including the statute of limitations."[17] As such, the dismissal of a claim at the pleading stage is an "irregular approach" and "is appropriate only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense."[18] In other words, "[a]s long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are

---

[15] 18 U.S.C. § 1595(c).

[16] Docket No. 49, at 9 ("Plaintiff hopes that the Court will give her the benefit of the doubt and presume that Plaintiff's interaction with the SLC Red Lion occurred between August and December of 2015. However, a mere 20.8% probability (five of a potential 24 months between 2014-15) is insufficient, by itself, to survive pleading."); Docket No. 52, at 6; Docket No. 53, at 5–7; Docket No. 55, at 10–11.

[17] *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019).

[18] *Id.* at 876, n.12 (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs. Inc.*, 782 F.3d 922, 928–29 (7th Cir. 2015)).

left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record."[19]

Plaintiff alleges that she was trafficked at the SLC hotels through 2015, which could include up to the last day of 2015. It is therefore conceivable that at least some of the incidents giving rise to the TVPRA claims at issue occurred after July 21, 2015.

ESA Defendants argue that "it should be undisputed that [Plaintiff's trafficking] ended on or before May 1, 2015,"[20] because the Complaint references Danford's criminal charges and the Information filed against Danford regarding those charges states that he engaged in trafficking from December 21, 2014, through May 1, 2015. Even if the Information was properly before the Court, the Court is not persuaded that the date range stated in a criminal Information forecloses the possibility that trafficking incidents could have occurred outside of dates identified therein. Accordingly, the Court will not consider it "undisputed" that the trafficking events occurred before May 1, 2015.

As discussed, Plaintiff's Complaint alleges that she did not escape from Danford's control until 2016, and that she was trafficked from the SLC Hotels in 2014 and 2015. Defendants have not identified anything in the Complaint that negates the possibility that one or more of the incidents giving rise to the TVPRA claims asserted against each of the Defendants occurred toward the end of 2015. Dismissal on Defendants' statute of limitations arguments is therefore not warranted at this stage of the litigation. [21]

---

[19] *Id.* (quoting *Sidney Hillman Health Ctr.*, 782 F.3d at 928–29).

[20] Docket No. 52, at 6.

[21] *See Doe (J.R.L.) v. Hilton Domestic Operating Co. Inc.*, 810 F. Supp. 3d 194, 200 (D. Mass. 2025) (declining to dismiss claims as time barred where the complaint alleged that the plaintiff was trafficked "through December 2014," leaving open the possibility that she could have been trafficked on December 31, 2014, the final day that could give rise to the claims before they became time barred under the TVPRA).

b. *TVPRA Claims*

The TVPRA provides both criminal and civil penalties for sex trafficking. 18 U.S.C. § 1595 provides that:

> An individual who is a victim of a violation [of the TVPRA] may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

This provision imposes civil liability on a defendant who either: (1) committed a criminal offense under § 1591 of the TVPRA, which is known as perpetrator liability; or (2) knowingly benefitted from their participation in a venture that they knew or should have known was engaging in human trafficking in violation of § 1591, which is known as beneficiary liability.[22]

To support her theory of beneficiary liability, Plaintiff must make a sufficient showing that Defendants knowingly benefited from participation in a venture that it "knew or should have known" was engaged in sex trafficking. To support her theory of perpetrator liability, Plaintiff must show that Defendants harbored or maintained Plaintiff,[23] "knowing . . . or in reckless disregard of the fact" that she was being forced, threatened, or coerced to engage in commercial sex acts.[24] As described in detail below, Plaintiff's Complaint fails to make the requisite knowledge showing under either theory of liability.

---

[22] *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 1:24-CV-00109-DAE, 2024 WL 4224915, at *3 (W.D. Tex. Aug. 30, 2024) (citing *A.D., v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 (E.D. Va. July 22, 2020)).

[23] 18 U.S.C. § 1591(a) provides that "[w]hoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits" a person with the knowledge that the person is being trafficked, shall be punished as dictated in § 1591(b). Plaintiff asserts Defendants harbored, maintained, or provided Plaintiff in support of their perpetrator liability claim.

[24] 18 U.S.C. § 1591(a)(2).

Regarding beneficiary liability, Plaintiff must plead sufficient facts to demonstrate, at a minimum, Defendants should have known that the relevant venture was engaged in sex trafficking, "not merely that it might have been able to guess about sex trafficking."[25] Importantly, the facts alleged must support trafficking activities specifically, as opposed to facts suggesting other illegal conduct.[26]

Relevant here, district courts have routinely dismissed cases where the facts alleged support only that defendants were or should have been aware of commercial sex work generally, as opposed sex work induced by force, threats, fraud, or coercion, as prohibited by the TVPRA.[27] For example in *Doe (L.M.) v. 42 Hotel Raleigh.*, the complaint alleged that: the hotel staff was aware of the trafficker's "pimp name;" the plaintiff's rooms were paid for with cash; people were in and out of plaintiff's room regularly; and hotel staff observed the plaintiff's traffickers on the premises regularly. In finding that the complaint failed to plead that the defendants had actual or constructive knowledge of the trafficking activities, the district court explained that, while the

---

[25] *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 470 (E.D.N.C. 2024) (internal quotation marks and citation omitted).

[26] 18 U.S.C. § 1595(a); *Mueller v. Deutsche Bank Aktiengesellschaft*, 777 F. Supp. 3d 329, 339–340 (S.D.N.Y. 2025), *appeal filed*, No. 25-1162 (2d Cir. May 6, 2025) (finding the plaintiff merely "point[ed] to a wide array of facts suggesting that [the defendant's] customers were suspicious, high-risk, or engaged in illegal activity in general or that was not covered by the TVPRA" and therefore failed to "create a reasonable inference that defendants knew their clients were involved in human trafficking").

[27] *Lydia K. v. G6 Hosp. Franchising LLC*, No. 3:25-CV-0755-N, 2026 WL 370057, at *4 (N.D. Tex. Feb. 10, 2026) ("While these alleged facts may be sufficient to say that an observer knew or should have known of commercial sex, they do not suggest that [the hotel defendants] should have known that [the plaintiff] was trafficked as a result of force, fraud, or coercion, the specific activity prohibited by the TVPRA."); *Doe (L.M.)*, 717 F. Supp. 3d at 470 ("Courts have generally rejected arguments that such facts sufficiently impart constructive knowledge of sex trafficking to a hotel, on grounds that these allegations are consistent with prostitution, but do not evince sex trafficking.") (collecting cases); *A.B. v. Interstate Mgmt. Co.*, 746 F. Supp. 3d 997, 1007 (D. Or. 2024) ("[I]t is not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property.").

pleaded facts "perhaps create[d] a plausible inference of constructive knowledge of prostitution," "[c]onspicuously absent from plaintiff's complaint [were] any allegations that could plausibly produce an inference of trafficking by force or fraud such as, for example, signs of physical abuse, actual assaults by a trafficker of the victim, lack of money or identification, or any [other] sufficient allegations indicating force or fraud."[28]

By contrast, in *Doe (J.R.L.) v. Hilton Domestic Operating Co. Inc.*, the plaintiff sufficiently pleaded actual or constructive knowledge where, in addition to facts indicative of sex work generally, the complaint also included facts regarding the trafficker's involvement and presence in the hotel. Specifically, the complaint alleged that the trafficker paid for rooms with cash or a prepaid card, was often present at check in, and "lingered in the hotel parking lot when she was with a john."[29] The plaintiff also alleged she had been trafficked at the same hotel over a number of years, and the staff knew the plaintiff and her trafficker as regulars and permitted them to have any room they wanted. The presiding district court found that these allegations were sufficient "to nudge from possible to plausible the inference that" the defendant had constructive knowledge of sex trafficking.[30]

The Complaint here alleges that, during each of her stays at the SLC Hotels, Plaintiff paid rent every day or every few days, requested rooms in the back of the property, requested fresh linens, disposed of used condoms and condom wrappers in the hotel trash bins, used the hotel wifi to post sex work ads, hosted five to ten johns each day, met the johns in the lobby before

---

[28] 717 F. Supp. 3d at 472.

[29] 810 F. Supp. 3d at 204.

[30] *Id.* Notably, however, the district court in *Doe v. Hyatt Corp.* found that the plaintiff failed to allege that defendants should have known of trafficking activities occurring at the hotel where the facts pleaded were quite similar to those found to be sufficient in *Doe (L.M.).*

bringing them up to her room, and "transparently dressed for sex work."[31] Additionally, Plaintiff asserts that some of the Defendants were aware of low-starred Google reviews, wherein customers complained of sex work being apparent at the associated SLC Hotel. These facts support constructive knowledge that Plaintiff was engaged in commercial sex work generally. As explained, to survive dismissal, Plaintiff must allege a factual basis on which Defendants should have known Plaintiff's sex work was the result of force, threats, fraud, or coercion.

Relevant to coercion and force, Plaintiff asserts she had "visible bruises," and "in some cases a black eye,"[32] at the time of her check-in. She does not describe where she stayed on the occasions when she exhibited a black eye, or provide any specific details regarding size, location, or appearance of the bruising. She further states that, during a stay at the Red Lion, Plaintiff told one of the hotel's security guards that "her man" beat her.

Allegations of visible injuries, such as bruises, can support a defendant's constructive knowledge of sex trafficking if accompanied by other allegations suggesting that the injuries were caused by a trafficker. For example, allegations that hotel staff heard or observed a trafficker assaulting a victim, or observed a victim being physically restrained or monitored.[33]

No such allegations are included in the Complaint. Plaintiff alleges that, because she told a Red Lion security guard her "man" was beating her and that the security guard would have known she was engaging in sex work due to her activities at the hotel, the security guard should have known she was being trafficked. The Court disagrees. Plaintiff does not allege that she told the security guard anything to suggest that Danford was involved with Plaintiff's sex work. As

---

[31] Docket No. 1 ¶ 102.

[32] *Id.* ¶ 100.

[33] *See e.g., Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 193–194 (E.D. Pa. 2020); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284 (M.D. Fla. 2021).

stated, the Complaint suggests that Danford was not present when Plaintiff stayed at the SLC Hotels. Without any facts supporting that the security guard should have been aware that Plaintiff's partner was in some way connected to her sex work, this allegation does little to support that Defendants knew or should have known Plaintiff was being trafficked.

The Complaint also alleges that Danford forced Plaintiff to have his street name "Greezy" tattooed in large letters on her forearm in effort to "brand" her, which is a tactic commonly used by pimps.[34] In her responses to the Motions, Plaintiff asserts that her "status as a victim was obvious" to staff, in part because "any reasonable observer could tell she likely got the bruises from 'Greezy' thanks to the massive brand on her forearm."[35] Similar to the above analysis, without supporting that these staff members knew Danford, knew that Danford had the street name "Greezy," and that they observed or interacted with Danford in a manner suggesting he was asserting control over, or otherwise involved with Plaintiff's sex work, this allegation offers little-to-no support for Defendants' position.[36]

There are numerous reasons a person could have bruises, a black eye, and a name tattooed on their forearm. Without allegations to support that Defendants had sufficient information by which they should have associated the bruising and branding with the forceful or coercive conduct of a trafficker, such is insufficient to support that the Defendants should have known Plaintiff was being trafficked.

---

[34] Docket No. 1 ¶¶ 71, 72.

[35] Docket No 70, at 4.

[36] *Marcy C. v. MGM Resorts Int'l*, No. 2:24-CV-2027 JCM (MDC), 2025 WL 3187434, at *5 (D. Nev. Nov. 13, 2025) ("[P]laintiff's tattoo, which she asserts is a visible brand, is not necessarily obvious as something other than a tattoo of a name; she does not allege defendants' knowledge of it as a brand or the use of branding [in] the complaint.").

Finally, Plaintiff has also alleged generally that human trafficking is prevalent at hotels around the country, that hotel employees encounter victims of trafficking "far more often than members of the general public, and "the hotel industry is aware, and has long been aware, that this problem runs rampant behind its guestroom doors."[37] While informative to the inquiry, Courts have consistently held that "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that [a hotel company] participated in the trafficking of [a] plaintiff."[38]

Taking each of the above-discussed allegations as true and drawing all reasonable inferences therefrom, the Complaint fails to support that Defendants should have known Plaintiff was being subjected to force, threats, fraud, or coercion in relation to her sex work. Plaintiff does not allege that she in any way indicated to hotel staff that she needed help; that she was observed being restrained, harmed, or otherwise controlled by a trafficker; that her trafficker appeared at the hotels with her, paid for her room, lingered around the hotel while Plaintiff entertained a john, or was otherwise observed or heard by hotel staff acting in manner suggesting he was coercing or forcing plaintiff to engage in sex work.[39]

In sum, in the lineup of district court cases analyzing the sufficiency of a beneficiary theory claim, the Court finds the facts alleged here comfortably fit with those which courts find

---

[37] Docket No. 1, ¶¶ 57–59.

[38] *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021); *see also Marcy C.*, 2025 WL 3187434, at *6 ("[S]tatistics on sex workers, coercion, arrest data, and guest reviews . . . does not support the contention that defendants knew or should have known of her trafficking.").

[39] *See e.g., M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 962 (S.D. Ohio 2019); *T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 797–98 (S.D. Ohio 2024); *Doe (J.R.L.)*, 810 F. Supp. 3d at 204–05.

deficient.[40] Accordingly, the Court will dismiss Plaintiff's beneficiary liability claim as to all Hotel Defendants.

Plaintiff's perpetrator liability claim fails for the same reasons. As stated, to support perpetrator liability, the Plaintiff must allege sufficient facts to support, among other things, that Defendants took prohibited action "knowing" or "in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act."[41]

"[W]hile a beneficiary liability claim requires only constructive knowledge of a sex trafficking violation, a perpetrator liability claim requires a higher level of knowledge as to the use of force, fraud, or coercion"—at minimum, reckless disregard.[42] Therefore, for the same reasons discussed above regarding Plaintiff's failed beneficiary liability claim, Plaintiff has failed to plausibly allege that Defendants knew of or recklessly disregarded facts supporting that Plaintiff was subjected to force, threats of force, fraud, or coercion in relation to sex work. Accordingly, the Court will dismiss Count I in its entirety.

In Plaintiff's responses to the Motions to Dismiss, she includes a one-sentence request that she be granted leave to amend if the Court finds the Complaint deficient.[43] Rule 15 of the

---

[40] *See e.g., Lydia K.*, 2026 WL 370057, at *4 (finding beneficiary claim deficient where the complaint made "general allegations about sex trafficking issues in the hospitality industry" and alleged that the plaintiff exhibited "classic signs of sex work," such as provocative clothing, visible bruising, requests for extra linens, discarded used condoms in hotel trash bins, and heavy foot traffic by "non-guest men"); *Marcy C.*, 2025 WL 3187434, at *5.

[41] 18 U.S.C. § 1591(a)(2).

[42] *Lydia K.*, 2026 WL 370057, at *5.

[43] Docket No. Docket No. 69, at 23; Docket No. 70, at 26.

Federal Rules of Civil Procedure states that courts "should freely give leave [to amend] when justice so requires."[44] However, "this liberal policy is not without limits."[45]

Rule 7 of the Federal Rules of Civil Procedure requires a request for relief to be "made by motion," "state with particularity the grounds for seeking the order," and "specify the relief sought," among other things.[46] Recognizing the importance of Rule 7, the Tenth Circuit has held that a request to amend is appropriately denied when such request is made "in a single sentence" in response to a motion to dismiss, thereby failing to "notify the court and opposing counsel of the grounds for amendment."[47]

Such is the case here. Plaintiff's request to amend fails to specify any factual allegations it could assert to correct the deficiencies, or otherwise notify the court of the asserted grounds for amendment.[48] Accordingly, the Court will not grant Plaintiff's request for leave to amend.

After responding to Defendants' Motions to Dismiss, Plaintiff filed a Motion to Amend, seeking only to add ESA Management, Inc. as a party to the case and remove Defendant Extended Stay America Inc.[49] The proposed amended complaint does not attempt to correct any of the original Complaint's other deficiencies. Because Plaintiff's proposed Amended Complaint

---

[44] Fed. R. Civ. P. 15(a)(2).

[45] *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014).

[46] Fed. R. Civ. P. (7)(b)(1).

[47] *Albers*, 771 F.3d at 706.

[48] Plaintiff's request for leave to amend states "If the Court dismisses [Plaintiff's] case, [she] respectfully requests it do so without prejudice and with leave to amend so McKenzie can add the following allegations:" The sentence then ends, and no allegations follow. Docket No. 70, at 26.

[49] Docket No. 71.

15

suffers from the same deficiencies as the original Complaint discussed herein, the Court will deny Plaintiff's Motion to Amend as futile.[50]

## IV.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions to Dismiss (Docket Nos. 49, 52, 53, and 55) are GRANTED. It is further

ORDERED that Plaintiff's Motion to Amend (Docket No. 71) is DENIED.

DATED this 31st day of March, 2026.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[50] *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (stating denial of a leave to amend is appropriate if amendment would be futile). The Motion the Amend is also subject to denial for failure to comply with DUCivR 15-1(a), which requires a redlined version of the proposed amended pleading to be included with the Motion.